W. Derek Shakabpa (DC Bar No. 444168)
wshakabpa@cftc.gov
David Acevedo (admitted in NY)
dacevedo@cftc.gov
Commodity Futures Trading Commission
Division of Enforcement
Stephen J. Obie, Regional Counsel/Associate Director
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9748 (Shakabpa)
(646) 746-9940 (Facsimile)

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
| |
COMMODITY FUTURES TRADING | ) |
COMMISSION, | ) |
| ) |
     Plaintiff, | ) |
| ) |
v. | ) |
| ) |
| ) |
JOHN B. WILSON and JBW Capital LLC, | ) |
| ) |
| ) |
     Defendants. | ) |
_____ | ) |

Civil Action No.:

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE AND OTHER EQUITABLE RELIEF AND CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

JURY TRIAL DEMANDED

Plaintiff, the United States Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I.    SUMMARY

1. From at least July 2007 through at least May 2010 (the "Relevant Period"), Defendants John B. Wilson ("Wilson") and JBW Capital LLC ("JBW") acted as unregistered Commodity Pool Operators ("CPOs") and solicited at least $1.8 million from at least 30 pool participants for the purpose of trading commodity futures. Defendants represented to pool participants that Wilson was using an algorithmic trading software to manage the trading.

Between at least September 2007 and September 2009, Defendants traded commodity futures on behalf of the pool and sent pool participants weekly updates of the trading results via email. Defendants were not exempt from the registration requirement as CPOs.

2.      In September 2008, the pool had a balance of over $2 million.  On September 11, 2008, Defendants lost over $1 million of pool funds in trading.  However, on September 13, 2008, Defendants sent pool participants a false email claiming the pool's balance was over $2.4 million and did not disclose the earlier loss.  On September 15-16, 2008, Defendants lost over 90% of the remaining funds in the pool's trading account.

3.      In addition, a few weeks after they lost nearly all of the pool funds, Defendants solicited a new participant and falsely told him the pool had over $2 million in capital.  In December 2008, Defendants sent this new participant a false email claiming profits when Defendants had actually lost most of this investor's money.  Defendants ultimately solicited and obtained a total of $200,000 from this new participant, but failed to disclose the massive losses suffered in September 2008.

4.      Plaintiff CFTC seeks to permanently enjoin such acts and practices and to compel Defendants' compliance with the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq*. (2010), and the CFTC's Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq*. (2012).  In addition, the CFTC seeks restitution, disgorgement, civil monetary penalties, and such other equitable relief as this Court may deem necessary or appropriate.

5.      Unless restrained and enjoined by this Court, Defendants are likely to engage in the acts and practices alleged in this Complaint, or in similar acts and practices, as described more fully below.

## II.  JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7

U.S.C. § 13a-1(a), which authorizes the Commission to seek injunctive relief against any person

whenever it shall appear to the Commission that such person has engaged, is engaging, or is

about to engage in any act or practice constituting a violation of any provision of the Act, or any

rule, regulation, or order promulgated thereunder.

7.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e), because Defendants are found in, inhabit, or transact business in this district and/or

the acts and practices in violation of the Act have occurred, are occurring, or are about to occur

within this District, among other places.

## III.  PARTIES

8.      **Plaintiff U.S. Commodity Futures Trading Commission** is an independent

federal regulatory agency that is charged by Congress with the administration and enforcement

of the Act, as amended, 7 U.S.C. §§ 1 *et seq*., and the Commission's Regulations promulgated

thereunder, 17 C.F.R. §§ 1 *et seq.*

10.     **John B. Wilson** is a resident of Boston, Massachusetts.  Between September

2005 and April 2006, Wilson was registered with the Commission through the National Futures

Association ("NFA") as an Associated Person of Tradex Group LLC.  Wilson has never been

registered as a CPO.

11.     **JBW LLC** is a Massachusetts limited liability company formed on or about July

23, 2007, with its principal place of business at 6 Whittier Place, Ste. 8N, Boston, MA 02114.

Wilson is the sole managing director of JBW.  JBW has never been registered with the

Commission in any capacity.

3

#### IV.   STATUTORY BACKGROUND

12.     A Commodity Pool Operator ("CPO") is any person or entity engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or indirectly, or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.  7 U.S.C. § 1a(5).

13.     A commodity pool is an investment trust, syndicate, or similar form of enterprise operated for the purpose of trading commodity interests.  17 C.F.R. § 4.10(d)(1).  A pool participant is any person that has any direct financial interest in a pool.  17 C.F.R. § 4.10(c).

14.     The E-mini S&P 500 futures contract ("E-mini") and the U.S. Treasury Bond futures contract ("T-Bond") are traded on and subject to the rules of the Chicago Mercantile Exchange ("CME"), a designated contract market.  During the Relevant Period, Wilson traded E-minis and T-Bonds through Globex, CME's electronic trading platform.

#### V.   FACTS

**A     Acting as Unregistered CPOs**

15.     On or about July 23, 2007, Wilson formed a Massachusetts limited liability company called JBW Capital LLC and began soliciting investors.  Wilson is the sole manager and registered agent of JBW identified on the Massachusetts Certificate of Organization.

16.     Wilson formed JBW for the purpose of soliciting and accepting funds from participants to trade commodity futures.

17.     Wilson solicited potential pool participants by claiming he had an algorithmic software program for trading E-mini and T-Bond futures contracts and that his program had achieved highly successful hypothetical results.

18.     On or about September 10, 2007, Wilson opened a bank account in JBW's name at Sovereign Bank.  Wilson was the sole signatory on the JBW account.

19.     On or about September 12, 2007, Wilson opened a trading account in JBW's name at MF Global, Inc. ("MF Global"), a registered Futures Commission Merchant ("FCM"). Wilson listed himself as the "Managing Director" and had sole trading authority on this account. The JBW trading account was open from September 2007 through at least May 2010; however, Wilson ceased all trading in JBW's account by September 2009.

20.     During the Relevant Period, Wilson solicited and accepted at least $1.8 million, via checks and wire transfers, from at least 30 pool participants to trade E-mini and T-Bond commodity futures on their behalf.  Wilson pooled their funds by depositing them into JBW's bank and trading accounts.  Wilson invested some of his own funds in the JBW commodity pool.

21.     Wilson represented, orally and via telephone, to pool participants that his algorithmic software automatically generated trading signals and that he placed trades based on those signals in the JBW account.

22.     Wilson solicited prospective pool participants in person, via telephone, and via email.  Wilson provided pool participants updates about his trading results via email and telephone.

23.     Prior to mid-2008, Wilson collected a graduated performance fee based for his services managing and trading for the pool of between 25% and 40% of the returns.

24.     Neither Wilson nor JBW were registered with the CFTC as CPOs and were not exempt from registration as CPOs under CFTC Regulation 4.13(a)(2), 17 C.F.R. § 4.13(a)(2), because the pool had more than 15 participants and more than $400,000 in gross capital contributions.

25.     During his testimony before Commission staff, Wilson admitted that he was the sole manager of JBW.

26.     During the Relevant Period, Wilson deposited approximately $2.1 million, including some of his own funds, into JBW's trading account  and had total net trading losses of approximately $1.8 million.

**B      Commodity Pool Fraud**

27.     By the beginning of September 2008, the JBW trading account had a balance of approximately $2.55 million.

28.     On September 11, 2008, Wilson lost over $1 million on a single T-Bond futures trade.

29.     On September 13, 2008, Wilson emailed the JBW pool participants and falsely represented the pool's value as $2,475,941.  Wilson failed to disclose the approximately $1 million loss he had suffered on September 11, 2008.

30.     During his testimony before Commission staff, Wilson admitted that the September 13, 2008 email was false and inaccurate.

31.     On September 15, 2008, Wilson lost approximately $988,000 on a single E-mini futures trade.

32.     On or about September 16, 2008, Wilson lost approximately $358,000 on a single T-Bond futures trade.

33.     On or about September 18 or 19, 2008, Wilson called each pool participant and informed them of the significant losses that JBW had suffered the previous two weeks.

34.     On September 22, 2008, Wilson emailed the JBW pool participants and again admitted the large losses and admitted that he had failed to disclose the $1 million loss incurred on September 11, 2008.  By the end of September 2008, the JBW trading account had a balance of approximately $10,943, having suffered a net monthly loss of approximately $2.54 million.

35.     Between May and August 2008, Wilson solicited a new pool participant, D.M, and touted JBW's successful returns to him.

36.     On or about September 29, 2008, Wilson deposited $100,000 from D.M. into JBW's bank account and later transferred those funds to JBW's trading account.

37.     Wilson failed to disclose to D.M. the significant losses that JBW had suffered on September 11 and 15, 2008.  In his testimony to Commission staff, Wilson admitted that he had failed to disclose the actual value of the JBW pool when D.M. invested in September 2008.

38.     On or about September 28, 2008, Wilson provided D.M. a "Certificate of Beneficial Interest," which showed that at the time D.M. represented 3.76% of JBW's assets, when in fact, D.M.'s investment was approximately 75% of JBW's assets by the end of September 2008.

39.     On December 12, 2008, Wilson emailed D.M. and falsely represented that D.M. had made approximately $20,000 in profits on his contribution when, in fact, Wilson had already lost the majority of D.M.'s initial investment.

40.     Based on Wilson's false representations, D.M. invested another $100,000 in JBW on December 23, 2008.

41.     Wilson subsequently lost the majority of D.M.'s investment in JBW by September 2009.  D.M. received back approximately $33,711 from JBW, thereby suffering a net loss of approximately $166,288.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

### VIOLATIONS OF SECTION 4b(a)(1)(A)-(C) OF THE ACT

### Fraud By Misrepresentation And Omission Of Material Facts

42.     The allegations set forth in paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

43.     For acts on or after June 18, 2008, Section 4b(a)(1)(A)-(C) of the Act, as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act ("CRA")), § 13102, 122 Stat. 1651 (effective June 18, 2008), to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C), makes it unlawful:

for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person. . . –

(i) to cheat or defraud or attempt to cheat or defraud the other person;

(ii) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;

(iii) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person;.…

44.     As set forth above, in connection with the trading of E-mini and T-Bond futures contracts traded on or behalf of the JBW pool participants, Wilson cheated or defrauded, or

attempted to cheat or defraud, willfully made or caused to be made false reports or statements to pool participants, and willfully deceived or attempted to deceive JBW pool participants by, among other things, (1) making false representations or omitting material facts regarding the pool's value to pool participants ; (2) failing to timely disclose material and significant trading losses; (3) making false reports to pool participants; and (4) fraudulently soliciting at least one pool participant, including by misrepresenting profits when the pool had, in fact, suffered losses, in violation of Section 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C).

45.    Wilson engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

46.    During the Relevant Period, Wilson was an official, agent, or managing director of JBW acting within the scope of his employment or office.  Thus, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2, JBW is liable for Wilson's violations of Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C).

47.    Each misrepresentation or omission of material fact or false report or statement including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C).

## COUNT II

## VIOLATIONS OF SECTION 4o(1)(A)-(B) OF THE ACT

### Fraud and Deceit by a CPO

48.     The allegations set forth in paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

49.     Section 4o(1)(A)-(B) of the Act, 7 U.S.C. § 6o(1)(A)-(B), makes it unlawful for a CPO or Associated Person of a CPO, whether registered or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

(A)     to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B)     to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

50.     As described more fully above, Defendants acted as CPOs by soliciting and accepting funds from participants for the purpose of pooling their funds to trade commodity futures on CME's Globex trading platform.  Wilson was the sole manager of the JBW pool, was its sole trader, and had sole control over JBW's bank and trading accounts.

51.     As described more fully above, Wilson, while acting as a CPO and using the mails, emails and wire transfers, defrauded and deceived, or engaged in transactions which acted as a fraud and deceit, pool participants by (1) making false representations or omitting material facts regarding the pool's value to pool participants ; (2) failing to timely disclose trading losses; (3) making false reports to pool participants; and (4) fraudulently soliciting at least one pool

participant, including by misrepresenting profits when, in fact, the pool had suffered losses, in

violation of Section 4o(1)(A)-(B) of the Act, 7 U.S.C. § 6o(1)(A)-(B).

52.     Wilson engaged in the acts and practices described above knowingly or with

reckless disregard for the truth.

53.     During the Relevant Period, Wilson was an official, agent, or managing director

of JBW acting within the scope of his employment or office.  Thus, pursuant to Section

2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2, JBW is

liable for Wilson's violations of Section 4o(1)(A)-(B) of the Act, 7 U.S.C. § 6o(1)(A)-(B).

54.     Each device, scheme, or artifice to defraud or to deceive and each transaction,

practice, or course of business that operated as a fraud or deceit is alleged as a separate and

distinct violation of Section 4o(1)(A) and (B) of the Act as amended, 7 U.S.C. § 6o(1)(A) and

(B).

**COUNT III**

**VIOLATION OF SECTION 4m(1) OF THE ACT**

**Acting as an Unregistered CPO**

55.     The allegations set forth in paragraphs 1 through 41 are re-alleged and

incorporated herein by reference.

56.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any person to

act as a CPO and make use of the mails or any means of instrumentality of interstate commerce

in connection with his business as such CPO, unless registered as a CPO.

57.     Section 1a(5) of the Act, 7 U.S.C. § 1a(5), defines a CPO as any person or entity

engaged in a business that is of the nature of an investment trust, syndicate, or similar form of

enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds,

securities, or property, either directly or indirectly, or through capital contributions, the sale of

stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for

future delivery on or subject to the rules of any contract market or derivatives transaction

execution facility.

58.     CFTC Regulation 4.13, 17 C.F.R. § 4.13, lists the criteria for exemption from

registration as a CPO under the Act.  These criteria include that none of the pools operated by the

person have more than 15 participants at any time and the total gross capital contributions in all

of the pools the person operates or intends to operate do not in the aggregate exceed $400,000.

In addition, any person who desires to claim relief from registration provided by this regulation

must electronically file a notice of exemption from CPO registration with the NFA.  The pool

that Wilson operated, JBW, had at least thirty participants and total gross contributions of over

$1 million.  Wilson never filed a notice with the NFA that he was acting as an exempt CPO.

59.     As more fully described above, Wilson solicited and accepted funds from pool

participants via check and wire transfers for the purpose of trading commodity futures, and  these

funds were pooled in bank and trading accounts.  Wilson also used email and telephone to

periodically report updates of the pool's value and trading results to pool participants.

60.     During the Relevant Period, Defendants acted as CPOs, but were never registered

with the CFTC as CPOs and were not exempt from registration as CPOs because the pool they

operated had more than 15 participants and more than $400,000 in total gross contributions.  *See*

CFTC Regulation 4.13(a)(2), 17 C.F.R. § 4.13(a)(2).  Thus, Defendants acted as unregistered

CPOs in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

61.     During the Relevant Period, Wilson was an official, agent, or managing director

of JBW acting within the scope of his employment or office.  Thus, pursuant to Section

2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2, JBW is

liable for Wilson's violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

## VII.   RELIEF REQUESTED

**WHEREFORE**, the CFTC respectfully requests that the Court, as authorized by Section

6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and pursuant to its own equitable

powers:

A.      Enter an order finding that Defendants violated Section 4b(a)(1)(A)-(C) of the Act

as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C), and Sections 4o(1)(A)-(B)

and 4m(1) of the Act, as amended, 7 U.S.C. §§ 6o(1)(A)-(B) and 4m(1).

B.      Enter an order of permanent injunction enjoining Defendants and all persons

insofar as they are acting in the capacity of Defendants' agents, servants, employees, successors,

assigns, and attorneys, and all persons insofar as they are acting in active concert or participation

with Defendants, who receive actual notice of such order by personal service or otherwise, from

directly or indirectly:

1.      Engaging in conduct in violation of Sections 4b(a)(1)(A)-(C), 4o(1)(A)-

(B), and 4m(1) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§

6b(a)(1)(A)-(C), 6o(1)(A)-(B), and 6m(1);

2.      Trading on or subject to the rules of any registered entity, as that term is

defined in Section 1a of the Act, as amended by the CRA, and the Dodd-Frank

Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"),

Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability

Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified

at 7 U.S.C. § 1a *et seq.*;

3.      Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2011)) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

4.      Having any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts traded on their behalf;

5.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts;

6.      Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts;

7.      Applying for registration or claiming exemption from  registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

8.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a)

registered, exempted from registration or required to be registered with the
Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §
4.14(a)(9) (2012).

C.      Enter an order requiring Defendants, as well as any successors, to disgorge,
pursuant to such procedure as the Court may order, all benefits received including, but not
limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or
indirectly, from acts or practices that constitute violations of the Act as described herein,
including pre- and post-judgment interest thereon from the date of such violations;

D.      Enter an order directing Defendants and any successors, to rescind, pursuant to
such procedures as the Court may order, all contracts and agreements, whether implied or
express, entered into between him and any of the customers whose funds were received by him
as a result of the acts and practices which constituted violations of the Act, as described herein;

E.      Enter an order requiring Defendants to make full restitution to each and every
person or entity whose funds Defendants received or caused another person or entity to receive
as a result of acts and practices that constituted violations of the Act, as amended by the CRA, as
described herein, and pre- and post-judgment interest thereon from the date of such violations;

F.      Enter an order directing Defendants to pay a civil monetary penalty in the amount
of (1) the higher of $140,000 for each violation of the Act committed on or after October 23,
2008, and $130,000 for each violation of the Act committed before October 23, 2008, or (2)
triple the monetary gain to Defendants for each violation of the Act described herein, plus post-
judgment interest;

G.      Enter an order requiring Defendants to pay costs and fees as permitted by 28
U.S.C. §§ 1920 and 2412(a)(2); and

H.      Such other and further relief as the Court deems necessary and appropriate under

the circumstances.


Dated: September 28, 2012                    Respectfully submitted,

                                             **STEPHEN J. OBIE**
                                             **REGIONAL COUNSEL**
                                             **Commodity Futures Trading Commission**


                                             */s/ W. Derek Shakabpa*
                                             W. Derek Shakabpa (DC Bar No. 444168)
                                             Senior Trial Attorney
                                             David Acevedo (admitted in NY)
                                             Chief Trial Attorney
                                             Commodity Futures Trading Commission
                                             Division of Enforcement
                                             140 Broadway, 19th floor
                                             New York, NY 10005
                                             (646) 746-9748
                                             wshakabpa@cftc.gov